******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WIND COLEBROOK SOUTH, LLC *v.*
# TOWN OF COLEBROOK
## (SC 20594)

Robinson, C. J., and D'Auria, Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 12-64 (a)), the following property, if not exempted, shall be taxed as real property: "Dwelling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, [and] all other buildings and structures . . . ."

Pursuant further to statute (§ 12-41 (c)), "[t]he annual declaration of the tangible personal property owned by such person on the assessment date, shall include, but is not limited to . . . [m]achinery used in mills and factories, cables, wires, poles, underground mains, conduits, pipes and other fixtures of water, gas, electric and heating companies . . . ."

The plaintiff, which owns and operates a wind to electricity generation facility in the defendant town, appealed to the trial court from the decision of the town's board of assessment appeals. The board had denied the plaintiff's appeal from the town assessor's allegedly improper classification of its two wind turbines and the equipment associated with the turbines as real property pursuant to § 12-64 (a), rather than personal property pursuant to § 12-41 (c), and its appeal from the assessor's overvaluation and overassessment of the plaintiff's property. The turbines, which each consist of a tower, a hub, a nacelle, and a three blade rotor, are located on one parcel of land and controlled by a remote computer system, which, along with its associated equipment and software, is stored on an adjacent parcel of land. The tower of each turbine is more than 300 feet in height, contains a control panel and other equipment accessible through an exterior door at its base, and is bolted into a separate concrete foundation. The turbines were designed to remain in place for twenty years, after which the plaintiff agreed to decommission them. On its 2015 declaration of personal property, the plaintiff apparently included the value of the turbines and the associated equipment. The town assessor, however, determined that the turbines should be taxed as real property and that the costs incurred in the development of the facility containing the turbines should be considered in the valuation of the turbines for purposes of assessment and taxation. The town then hired a certified general real estate appraiser, whose appraisal the assessor used to determine the assessed value and fair market value for the parcel on which the turbines were situated. The assessor continued to use those values on the town's grand list in 2016, 2017, and 2018. On appeal to the trial court, the plaintiff claimed, inter alia, that the assessor had improperly classified the turbines as real property and had overvalued and overassessed its property. In support of the latter claim, the plaintiff introduced testimony from its own appraiser, D, who based his appraisal on the cost and income approaches, treated the wind turbines and associated equipment as personal property, and ultimately determined that the fair market value of the plaintiff's property was significantly less than the town's fair market valuation. The trial court rejected those claims, concluding, inter alia, that the assessor properly classified the wind turbines as real property under § 12-64 (a) because they were "buildings" or "structures" within the meaning of that statute and that the equipment associated with the turbines was also real property. The court also found that, given those conclusions, the plaintiff had failed to establish its allegations of overvaluation and overassessment because D's appraisal treated the wind turbines and associated equipment as personal property. From the judgment rendered thereon in favor of the town, the plaintiff appealed. *Held*:

1. The trial court correctly concluded that the wind turbines were taxable as real property pursuant to § 12-64 (a) but incorrectly concluded that the equipment associated with the turbines also was taxable as real property instead of personal property under the "fixtures of . . . elec-

tric . . . companies” provision of § 12-41 (c): this court previously has construed and applied the word “building,” as used in § 12-64 (a), to include edifices that are enclosed and suitable for occupancy or storage and that are virtually permanent, the trial court found that the interior of the base of each wind turbine was large enough to be occupied by several individuals at one time and that the turbines were virtually permanent, insofar as they were completely enclosed, designed to remain in place for twenty years, and would cost up to approximately $3 million to decommission, and, therefore, the trial court correctly determined that the turbines were taxable as buildings pursuant to § 12-64 (a); moreover, the wind turbines also constituted structures within the meaning of § 12-64 (a), as a review of the legislative history of the statute, including a recent amendment thereto, revealed that, when the legislature added the word “structures” to the “all other buildings and structures” catchall provision of § 12-64 (a), it intended the broad, commonly approved usage of the word, namely, “something . . . that is constructed,” and applying the canon of ejusdem generis to limit “structures” narrowly to edifices, like those enumerated in the statute, that are enclosed and suitable for occupancy would render the addition of the word “structures” to that catchall provision superfluous; furthermore, although the wind turbines themselves could not be considered fixtures, insofar as they did not have the character of personal property, the turbines’ associated equipment could be considered fixtures and, therefore, was taxable as personal property pursuant to the “fixtures of . . . electric . . . companies” provision of § 12-41 (c), and, because the trial court incorrectly determined that the equipment associated with the turbines was taxable as real property pursuant to § 12-64 (a) rather personal property taxable pursuant to § 12-41 (c), a remand to the trial court was necessary for, inter alia, a factual determination regarding the valuation of the equipment taxable under § 12-41 (c).

2. The trial court incorrectly concluded that the plaintiff had not established its allegations of overvaluation and overassessment, and, accordingly, the case was remanded for a determination regarding the amount of the reassessment that would be just: the trial court’s rejection of D’s appraisal, which treated the turbines and associated equipment as personal property, was premised on the conclusion that the turbines and associated equipment were taxable as real property, and, in light of this court’s conclusion that the associated equipment must be treated as personal property pursuant to § 12-41 (c), the trial court’s failure to consider D’s appraisal lacked a legal basis and, thus, was clearly erroneous; moreover, because the record established that the valuation the trial court accepted classified the associated equipment as real property when it should have been classified separately as personal property, it could not be reasonably contended that the defendant did not overvalue the real property.

(*One justice concurring separately*)

Argued January 19—officially released August 2, 2022

*Procedural History*

Appeal from the decision of the defendant’s board of assessment appeals concerning the tax assessment on certain of the plaintiff’s property, brought to the Superior Court in the judicial district of Litchfield and tried to the court, *Shaban, J.*; judgment in part for the defendant, from which the plaintiff appealed. *Reversed in part; further proceedings.*

*Gregory F. Servodidio*, with whom was *Michael J. Marafito*, for the appellant (plaintiff).

*Patrick E. Power*, for the appellee (defendant).

*Opinion*

ROBINSON, C. J. The principal issue in this appeal is whether wind turbines used for the generation of electricity, and their associated equipment, are properly classified for purposes of taxation as real property pursuant to General Statutes § 12-64 (a)[1] or, instead, as personal property pursuant to General Statutes § 12-41 (c).[2] The plaintiff, Wind Colebrook South, LLC, appeals[3] from the judgment of the trial court rendered primarily in favor of the defendant, the town of Colebrook, in this municipal property tax appeal brought pursuant to General Statutes §§ 12-117a[4] and 12-119.[5] On appeal, the plaintiff claims that the trial court improperly upheld the defendant's (1) classification of its two wind turbines and their associated equipment as real property pursuant to § 12-64 (a), (2) overvaluation and overassessment of its property, and (3) double assessment of the plaintiff's declared personal property. Although we conclude that the wind turbines were properly classified as real property, we agree with the plaintiff's claim that their associated equipment should have been classified as personal, rather than real, property. Accordingly, we reverse in part the judgment of the trial court.

The record reflects the following relevant facts, as found by the trial court, and procedural history. The plaintiff owns and operates a wind turbine facility on two parcels of land located at 17 and 29 Flagg Hill Road in Colebrook. The facility, the first and only full-scale wind-to-electricity generation facility in Connecticut, consists of two 2.85 megawatt wind turbines, both located at 29 Flagg Hill Road. The turbines are controlled by a remote computer known as the Supervisory Control and Data Acquisition System (computer system). The computer system and its accompanying equipment and software are all stored at 17 Flagg Hill Road. The turbines, which collectively weigh 418,657 pounds, each consist of a tower, a hub, a nacelle, and a rotor with three blades that have a 338 foot diameter. Each tower is approximately 328 feet in height and contains a control panel and other equipment accessible through an exterior door at its base. According to the defendant, each turbine, including the tower and blade, is a total of 492 feet high measuring from the top of a blade in its full upright position. Secured by 124 large anchor bolts, the turbines are mounted on separate concrete foundations, each of which is 58 feet in diameter and 9 feet deep. Construction of the turbines was completed in October, 2015, and the facility began commercial operation in November, 2015.

Both parties agreed that the turbines have "an approximate useful life of at least twenty years," after which the plaintiff has agreed to decommission them. Decommissioning the turbines is a complex process that will require unfastening the 124 anchor bolts that are cemented into the foundation and removing the

turbines. The estimated cost of decommissioning the turbines is between $1,650,000 and $3,200,000. Although the trial court did not make a finding as to the effect on the land of decommissioning the turbines, the defendant argues that it will cause substantial damage to the land.

The defendant first taxed the plaintiff's turbines on its grand list of October 1, 2015. The defendant's assessor, Michele Sloane, determined that the turbines should be taxed as real property and that the costs incurred in the development of the facility should be considered in the valuation of the turbines for purposes of assessment and taxation. Subsequently, the plaintiff filed its 2015 declaration of personal property, which requires taxpayers to differentiate property by line item or code numbers. The plaintiff reported the value of its property under code 16—which includes furniture, fixtures, and equipment—to be $9,628,795, and the value of its property under code 20—which includes electronic data processing equipment—to be $367,000, with no supporting information or documentation to explain the derivation of each value. In light of the amount listed under code 16, Sloane determined that the plaintiff's proposed valuation of that property must have included the turbines, and, as a result, she did not accept the plaintiff's code 16 valuation. She did, however, accept the plaintiff's code 20 valuation. Additionally, because the plaintiff did not explain or substantiate the values reported on its 2015 declaration of personal property, the defendant hired Glenn C. Walker, a certified general real estate appraiser experienced in the appraisal of energy production facilities, to appraise the properties. Sloane relied on Walker's appraisal to conclude that the assessed value for 29 Flagg Hill Road was $9,274,640, with a fair market value of $13,300,100. Sloane continued to use these values on the grand list in 2016, 2017, and 2018.

In its 2017 personal property declaration, the plaintiff listed three new items as code 16 property for 2015 through 2017, again providing no information or explanation about the derivation of those values, according to Sloane. Paul J. Corey, one of the plaintiff's employees, testified that the additional items reported in 2017 were all associated with the turbines. However, Sloane was under the impression that the additional values were not associated with the turbines,[6] and, for the 2015 through 2017 personal property declarations, she continued to disregard the original amount reported by the plaintiff on its 2015 declaration of personal property. Sloane accepted the additional values as personal property, while also adding a 25 percent penalty for late reporting. Sloane used these valuations again in 2018 for that year's grand list.

The plaintiff challenged Sloane's assessment by appealing to the defendant's board of assessment

appeals (board), claiming that Sloane improperly (1) overvalued and overassessed the property, (2) disregarded information regarding the wind turbines reported in the plaintiff's 2015 through 2018 declarations of personal property, (3) classified the wind turbines as real property, and (4) included items that were declared and assessed as personal property in her assessment of the real property, thus subjecting the plaintiff to double assessment and double taxation. The board denied the appeal. Subsequently, the plaintiff appealed from the decision of the board to the trial court pursuant to §§ 12-117a and 12-119.

In its tax appeal, the plaintiff renewed the claims it raised before the board. The plaintiff introduced testimony from an appraiser, P. Barton DeLacy, to challenge the defendant's $13,300,100 fair market valuation of the real property at 29 Flagg Hill Road, which included the turbines. DeLacy prepared a 2015 appraisal report using the cost[7] and income[8] approaches and treating the wind turbines and associated equipment as personal property. He ultimately determined that the fair market value of the plaintiff's properties as a whole, both real and personal property at 17 and 29 Flagg Hill Road, was $9,850,500.[9]

The trial court subsequently issued a memorandum of decision, first concluding that the defendant properly classified the wind turbines as real property for purposes of taxation under § 12-64 (a) because they were "structures" or "buildings" within the contemplation of that statute. Although the trial court did not provide an additional analysis regarding the turbines' associated equipment, it further concluded that the associated equipment was also real property. Given these conclusions, the trial court further determined that the plaintiff failed to establish (1) its allegation of overvaluation and overassessment because the appraisal submitted by DeLacy treated the wind turbines and associated equipment as personal property, (2) that there was a double assessment and double taxation of the plaintiff's declared personal property, and (3) that the assessment of property was manifestly excessive, as Sloane properly used the methods of valuation outlined in General Statutes § 12-62 (b) (2).[10] The trial court did, however, conclude that the plaintiff established that the defendant's imposition of a 25 percent late filing penalty was improper. Accordingly, the trial court rendered judgment in favor of the plaintiff on the illegality of the penalty and in favor of the defendant in all other respects. This appeal followed.

On appeal, the plaintiff claims that the trial court incorrectly concluded that (1) the wind turbines and associated equipment are taxable as real property pursuant to § 12-64 (a), (2) the plaintiff failed to establish that the defendant's assessor overvalued and overassessed the property, and (3) the plaintiff failed to establish that

there was a double assessment and, thus, double taxation of its declared personal property. We address each claim in turn.

I

We begin with the plaintiff's claim that the turbines are personal property rather than real property for purposes of taxation. In Connecticut, the taxation of real property is governed by § 12-64, whereas the taxation of personal property is governed by General Statutes § 12-71,[11] which provides that personal property must be listed subject to, among other statutes, § 12-41. See footnotes 1 and 2 of this opinion. The plaintiff argues that the turbines are "machines," which are personal property as defined by § 12-41 (c), insofar as they are comprised of the various components expressly identified in that statute, such as cables, wires, and poles. The plaintiff also argues that the turbines do not have any of the defining characteristics of the "structures" enumerated in § 12-64 (a), which would be characteristic of real property. In response, the defendant argues that the turbines are properly classified as real property pursuant to § 12-64 (a), given our interpretation of that statute in *Eastern Connecticut Cable Television, Inc.* v. *Montville*, 180 Conn. 409, 412, 414, 429 A.2d 905 (1980) (*Eastern Connecticut Cable*), which held a communications tower to be a structure, and *Stratford* v. *Jacobelli*, 317 Conn. 863, 877, 120 A.3d 500 (2015), which held portable aircraft hangars to be buildings or sheds. We agree with the defendant and conclude that the turbines are taxable as real property pursuant to § 12-64 (a).

Whether the trial court correctly concluded that the wind turbines and associated equipment were subject to taxation as real property pursuant to § 12-64 (a), rather than personal property under § 12-41 (c), is a question of statutory construction over which we exercise plenary review. See, e.g., id., 870–71. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, *including the question of whether the language actually does apply*." (Emphasis added; internal quotation marks omitted.) *Dish Network, LLC* v. *Commissioner of Revenue Services*, 330 Conn. 280, 291, 193 A.3d 538 (2018). In seeking to determine that meaning, it is well established that we follow the plain meaning rule pursuant to General Statutes § 1-2z. See, e.g., *Boardwalk Realty Associates, LLC* v. *M & S Gateway Associates, LLC*, 340 Conn. 115, 126, 263 A.3d 87 (2021).

We begin with the text of § 12-64 (a). That statute provides for taxation of real property, including "[d]welling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, all other buildings and structures . . . [and] all other lands and improvements thereon and

thereto . . . ." General Statutes § 12-64 (a). In contrast, § 12-41 (c), on which the plaintiff relies, defines personal property to include "[m]achinery used in mills and factories, cables, wires, poles, underground mains, conduits, pipes and other fixtures of water, gas, electric and heating companies . . . ." Although turbines are not expressly included in the language of § 12-64 (a), the defendant argues that the turbines are real property because they are structures, improvements, or buildings, as enumerated in that statute, or because they are fixtures annexed to and taxable as a part of any of the categories of real estate set forth therein.

In construing § 12-64 (a), "we do not write on a clean slate, but are bound by our previous judicial interpretations of the language and the purpose of the statute." (Internal quotation marks omitted.) *Stratford* v. *Jacobelli*, supra, 317 Conn. 871. This court previously has defined "building" in this context as a "constructed edifice *designed to stand more or less permanently*, covering a space of land, [usually] covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy." (Emphasis added; internal quotation marks omitted.) *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 412. In *Eastern Connecticut Cable*, this court was tasked with determining whether a communications tower, which was a 385 foot high assembly of twenty tubular steel sections that rested on a three feet by three feet concrete foundation embedded six feet into the ground, was a building pursuant to § 12-64 (a). Id., 410, 414–15. We recognized that, although a building is always a structure, not all structures are buildings, and concluded that, although the communications tower was a structure, it was not a building. Id., 414. Because the revision of § 12-64 in effect at that time did not provide for the taxation of structures but, instead, was limited to buildings,[12] this court concluded that the towers at issue in *Eastern Connecticut Cable* were not taxable as real property. Id. It was not until 1993, subsequent to *Eastern Connecticut Cable*, that the legislature added the term "structures" to § 12-64 (a). See Public Acts 1993, No. 93-64, § 1 (P.A. 93-64).

Notwithstanding the amendment to § 12-64, the trial court in the present case concluded that the plaintiff's turbines were "buildings," as defined by this court in *Eastern Connecticut Cable* and as applied in *Jacobelli*. The plaintiff argues that the turbines in this case are distinguishable from the property as issue in *Jacobelli*, in which this court held that portable aircraft hangars are real property pursuant to § 12-64 (a) because, in that case, the parties stipulated that the hangars were used for storage. We disagree that *Jacobelli* is distinguishable in this regard. As we stated in *Jacobelli*, the controlling inquiry is not

the actual use of the property but, rather, the use for which it is suitable.[13] See *Stratford* v. *Jacobelli*, supra, 317 Conn. 873–74. Unlike the tower in *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 414, which this court determined was unsuitable for occupancy, the trial court in the present case determined that the turbines were suitable for occupancy or storage. That conclusion was supported by the trial court's unchallenged factual findings that there was enough room in the interior of the base of each turbine for several individuals to be present at one time and that its design allowed it to be occupied much like a garage, shed, barn, or silo, which are buildings or structures expressly enumerated in § 12-64 (a).

Further, in comparison to the hangars determined to be buildings or sheds in *Jacobelli*, the turbines in the present case are also "virtually permanent . . . ." (Internal quotation marks omitted.) *Stratford* v. *Jacobelli*, 317 Conn. 877. As this court noted in *Jacobelli*, the definition of "buildings" imposes no strict permanency requirement, only that the structure is "more or less permanent . . . ." (Internal quotation marks omitted.) Id., 873. The hangars in *Jacobelli* were portable, temporary structures, and this court nevertheless held that the hangars were "virtually permanent as any other building might be . . . ." (Internal quotation marks omitted.) Id., 877. The trial court found that, like the hangars in *Jacobelli*, the turbines at issue in the present case were "more or less permanent. . . . [T]hey have interior space completely enclosed by walls, which makes them suitable for occupancy, and are used for the storage of equipment related to their operation. . . . The wind turbines also have roofs similar to that of a silo, [an] enumerated building, in that they are narrower than the base but complete the building by protecting the interior from external elements." Moreover, it is undisputed that the turbines are designed to remain in place for twenty years. Further, DeLacy testified that decommissioning the turbines at the end of their lifespan would cost up to $3,162,501. Thus, despite there being no strict permanency requirement in the classification of a building, the turbines are virtually permanent. Accordingly, we conclude that the trial court correctly determined that the turbines were taxable as buildings pursuant to § 12-64 (a).

In addition to arguing that the turbines are not buildings, the plaintiff argues that they are not structures and that the inclusion of the turbines within the "all other buildings and structures" catchall provision of § 12-64 (a) "requires a torturing and an expansion" of the statute. We disagree. The term "structure" is not defined in § 12-64 (a) or elsewhere in the tax chapter. "Generally, in the absence of statutory definitions, we look to the contemporaneous dictionary definitions of words to ascertain their commonly approved usage." *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 697, 258 A.3d 1268 (2021). Contemporary to the 1993 amendment of § 12-64 (a), the word "structure"

was defined as "something ([such] as a building) that is constructed . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) p. 1167; see also Webster's Third New International Dictionary (1986) p. 2267 (defining "structure" as "something made up of more or less independent elements or parts").

As required by § 1-2z, we must determine whether this statutory language is ambiguous. "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 828, 251 A.3d 56 (2020). As opposed to the commonly approved usage of "structures," the plaintiff argues that the phrase "all other buildings and structures" must be construed in the context of the preceding structures enumerated and that, because all of those enumerated structures are enclosed and suitable for occupancy, any nonspecified item of property must share those characteristics in order to be taxable pursuant to § 12-64 (a). Consistent with the canon of ejusdem generis,[14] the plaintiff's interpretation of the language as included in the statute is reasonable. Thus, we are left with more than one reasonable interpretation of the statute and turn to extratextual sources to resolve this ambiguity.

We begin with the legislative history. As we noted previously, the legislature added the term "structures" to § 12-64 (a) in 1993. See P.A. 93-64, § 1. The debate during the proceedings in the House of Representatives on the bill enacted as P.A. 93-64 demonstrates that its purpose was to "simply clarify that *all* structures and improvements not exempted are subject to the property tax" and to reduce tax appeals involving structures that the legislature intended to be assessed as taxable entities, such as gazebos and swimming pools. (Emphasis added.) 36 H.R. Proc., Pt. 7, 1993 Sess., pp. 2436–37, 2439–40, remarks of Representative Nancy Beals; see id., pp. 2440–41, remarks of Representative Robert M. Ward. Identifying a gazebo as a structure within the meaning of the statute, however, demonstrates that the legislature did not intend for structures to have to be buildings, as the enumerated structures are, to be taxable pursuant to § 12-64 (a). A conclusion that the only nonenumerated structures taxable pursuant to § 12-64 (a) are those that are enclosed and suitable for occupancy or storage—thereby rendering them "buildings" as defined by *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 412—would render the addition of the term "structures" in the 1993 amendment to the statute superfluous. See, e.g., *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 722, 780 A.2d 1 (2001) ("it should not be presumed that the legislature has enacted futile or meaningless legislation or that a change in a law was made without a reason" (internal quotation marks omitted)); see also *Arras* v. *Regional School District No. 14*, 319 Conn. 245, 260, 125 A.3d 172 (2015) ("[t]he legislature is presumed to be aware

of the interpretation [that] the courts have placed [on] one of its legislative enactments" (internal quotation marks omitted)). Thus, applying the canon of ejusdem generis would be inconsistent with the legislative history. See *In re Elianah T.-T.*, 326 Conn. 614, 623, 165 A.3d 1236 (2017) (rule of ejusdem generis applies unless contrary intent appears); see also *Miller's Pond Co., LLC* v. *New London*, 273 Conn. 786, 811 n. 25, 873 A.2d 965 (2005) ("[although] canons certainly do have their place in the construction of statutes, it strikes us as unwise to elevate them over all other forms of 'extratextual evidence' because, for almost every maxim found in the 'grab bag' of canons, an equal and opposite proposition may be found"); 2A N. Singer & J. Singer, Sutherland Statutes and Statutory Construction (7th Ed. 2007) § 47:22, pp. 392–94 ("[T]he general words are not restricted in meaning to objects of the same kind . . . if there is a clear manifestation of a contrary intent. . . . If, upon a consideration of the context and the objects sought to be attained and of the act as a whole, it adequately appears that the general words were not used in the restricted sense suggested by the rule, we must give effect to the conclusion afforded by the wider view in order that the will of the [l]egislature shall not fail." (Footnote omitted.)).

Further, the word "structure" is consistently defined broadly in other sections of the General Statutes as "any combination of materials that is affixed to the land" or "any combination of materials, other than a building, which is affixed to the land . . . ." See General Statutes § 7-147a (a) (historic districts);[15] General Statutes § 7-147p (a) (historic properties);[16] General Statutes § 8-13a (a) (1) (nonconforming land uses);[17] General Statutes § 29-265 (c) (certificates of occupancy).[18] Accordingly, we conclude that the legislature intended not the narrow construction propounded by the plaintiff but, rather, the commonly approved usage of "structure," which squarely encompasses the turbines at issue in the present case. This conclusion is also supported by references to both wind turbines and structures in other authorities. See, e.g., Regs., Conn. State Agencies § 16-50j-2a (36) (defining "[w]ind turbine tower" as "the base structure that supports a wind turbine rotor and nacelle"); see also *Daggett* v. *Feeney*, 397 P.3d 297, 306 (Alaska 2017) ("[a] wind turbine affixed to a [forty-nine foot] tower is clearly a fixed structure in the plain sense of the phrase, and towers have been recognized as 'structures' in other statutory contexts such as zoning codes").

The plaintiff maintains, however, that the turbines are not buildings or structures because they are "machines" taxable as personal property under § 12-41 (c). The defendant maintains that the turbines are properly classified as structures, improvements, or buildings and that, even if the turbines were classified as machinery, they would be machines pursuant to § 12-64 (a).[19]

At oral argument before this court, counsel for the plaintiff argued that "the tower simply assists in positioning the turbine in the right location in order to function properly." This factual representation is consistent with the trial court's finding that most of the equipment used to operate the turbines is contained within the nacelle, which is a section of the turbine distinct from the tower. Thus, at the very least, the towers of the turbines are not "machines," as this court held the same to be true of the communications towers determined to be structures in *Eastern Connecticut Cable* when it stated that "[t]*he town's contention that the tower is taxable as machinery is similarly unavailing*. The tower is used simply as a support for the various antennas [that] receive and transmit broadcasting signals. The tower itself neither transmits nor changes the application of energy." (Emphasis added.) *Eastern Connecticut Cable Television, Inc.* v. *Montville*, supra, 180 Conn. 414. Additionally, as the trial court pointed out, even if the turbines do have characteristics of machines, they do "not constitute 'machinery used in mills and factories,' " as set forth in § 12-41 (c).

The plaintiff also argues that the turbines must be classified as personal property because similarly situated property must be assessed equitably, and the only other commercial wind turbine in Connecticut, which is located in New Haven, is assessed as personal property.[20] This argument is unconvincing insofar as the statute the plaintiff cites in support of this argument, General Statutes § 12-55 (b),[21] requires only that "assessors . . . equalize the assessments of property *in the town* . . . ."[22] (Emphasis added.) This argument is equally unconvincing in regard to the hydroelectricity generating turbine located in Colebrook because, as the trial court found as a factual matter, the hydro turbine "was not at all similar to the wind turbines," and its "significant differences from the wind turbines do not warrant similar treatment." Crediting Sloane's testimony, the trial court found that the hydro turbine located in Colebrook was, unlike the wind turbines, moveable and removed when not in use.

In the alternative, the plaintiff argues that, as fixtures of a company engaged in the production of electrical energy,[23] the turbines are personal property pursuant to § 12-41 (c). See footnote 2 of this opinion. Specifically, the plaintiff argues that, even if the turbines are structures, as contemplated by § 12-64 (a), they are also fixtures of an electric company pursuant to § 12-41 (c), and that, as the statute more specifically on point, well established principles of statutory construction require this court to apply § 12-41 (c). See, e.g., *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 302, 21 A.3d 759 (2011) ("[I]t is a [well settled] principle of construction that specific terms covering the given subject matter will prevail over gen-

eral language of the same or another statute [that] might otherwise prove controlling. . . . The provisions of one statute [that] specifically focus on a particular problem will always, in the absence of express contrary legislative intent, be held to prevail over provisions of a different statute more general in its coverage." (Internal quotation marks omitted.)). We agree with the plaintiff with respect to the associated equipment. We disagree, however, with respect to the turbines themselves and conclude that the fixture analysis proposed by the plaintiff is factually inapplicable to the turbines.

A fixture is "a piece of personal property [that] has become so connected to realty . . . as to have lost its character as personalty . . . ." *ATC Partnership* v. *Windham*, 268 Conn. 463, 480, 845 A.2d 389 (2004); see *Capen* v. *Peckham*, 35 Conn. 88, 93 (1868) ("Property is divided into two great divisions, things personal and things real, and fixtures may be found along the dividing line. They are composed of articles that were once chattels, or such in their nature, and by physical annexation to real property have become accessory to it and parcel of it."). Examples of property held to be fixtures pursuant to Connecticut common law include articles such as machinery in a textile mill; see *ATC Partnership* v. *Windham*, supra, 481; burial crypts; see *Norwalk Vault Co. of Bridgeport, Inc.* v. *Mountain Grove Cemetery Assn.*, 180 Conn. 680, 690, 433 A.2d 979 (1980); and a bell located in the bell tower of a factory. See *Alvord Carriage Mfg. Co.* v. *Gleason*, 36 Conn. 86, 87–88 (1869). Unlike these articles, the turbines cannot be found along the dividing line between personal and real property, as they have no character of personalty.[24] The turbines, as constructed, were not once chattels that only became real property through physical annexation to the land and, thus, cannot be considered a fixture.[25] To the extent that the plaintiff believes that the wind turbines should be classified as personal property regardless, its recourse lies with the legislature. See, e.g., *Commission on Human Rights & Opportunities* v. *Edge Fitness, LLC*, 342 Conn. 25, 43, 268 A.3d 630 (2022) (recognizing "the legislature . . . [as] the policy-making branch of our government").

Although the turbines cannot properly be considered fixtures of an electric company, the associated equipment can be. As the trial court noted, § 16-50j-2a of the Regulations of Connecticut State Agencies defines the term "associated equipment" to include "any . . . fuel tank, backup generator, transformer, circuit breaker, disconnect switch, control house, cooling tower, pole, line, cable, conductor or emissions equipment . . . ." Regs., Conn. State Agencies § 16-50j-2a (1) (B). As we stated, § 12-41 (c) specifically enumerates "cables, wires, poles, underground mains, conduits, [and] pipes" as tangible personal property. However, the statute also includes "other fixtures of . . . electric . . . companies"; General Statutes § 12-41 (c); and, thus, would

encompass all associated equipment considered to be fixtures of the turbines. According to our common-law principles, if articles "are fixtures, the personalty becomes part of the property and they are [taxable as] realty." (Internal quotation marks omitted.) *Vallerie* v. *Stonington*, 253 Conn. 371, 372, 751 A.2d 829 (2000). However, in light of the specific language in § 12-41 (c) identifying cables, wires, poles, underground mains, conduits, pipes and other fixtures of electric companies as tangible personal property, we agree with the plaintiff that well established principles of statutory construction compel us to conclude that the associated equipment is personal property pursuant to § 12-41 (c).[26] See *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, supra, 301 Conn. 302. Accordingly, we conclude that the trial court correctly determined that the turbines are taxable as real property pursuant to § 12-64 (a). We also conclude, however, that the trial court incorrectly determined that the equipment associated with the turbines is taxable as real property pursuant to § 12-64 (a). Because the associated equipment is personal property taxable pursuant to § 12-41 (c), remand to the trial court is necessary for the factual determination of the valuation of the items taxable under that statute.

II

We next address the plaintiff's claim that the trial court incorrectly concluded that the plaintiff had not established its allegations of overvaluation and overassessment. The plaintiff argues that the trial court improperly failed to consider or to evaluate the merits of DeLacy's appraisal. In response, the defendant argues that the trial court did not reject the method of appraisal used by DeLacy but, rather, concluded that the appraisal was inadequate because it did not include an appraisal of the real property at 29 Flagg Hill Road. We conclude that we must remand the plaintiff's claim of overvaluation and overassessment for a determination of the amount of the reassessment in accordance with § 12-117a.

By way of background, "[§] 12-117a . . . provide[s] a method by which an owner of property may directly call in[to] question the valuation placed by assessors [on] his property . . . . In a § 12-117a appeal, the trial court performs a two step function. The burden, in the first instance, is [on] the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been overassessed. . . . In this regard, [m]ere overvaluation is sufficient to justify redress under [§ 12-117a] . . . . Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier. . . . The trier arrives at [its] own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on

value, and [its] own general knowledge of the elements going to establish value including [its] own view of the property." (Internal quotation marks omitted.) *Redding Life Care, LLC* v. *Redding*, 308 Conn. 87, 99–100, 61 A.3d 461 (2013). "Only after the court determines that the taxpayer has met his burden of proving that the assessor's valuation was excessive and that the refusal of the board of [assessment appeals] to alter the assessment was improper, however, may the court then proceed to the second step in a § 12-117a appeal and exercise its equitable power to grant such relief as to justice and equity appertains . . . . If a taxpayer is found to be aggrieved by the decision of the board of [assessment appeals], the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property." (Internal quotation marks omitted.) *Breezy Knoll Assn., Inc.* v. *Morris*, 286 Conn. 766, 776, 946 A.2d 215 (2008).

In the present case, the trial court determined that the appraisal conducted by DeLacy for the plaintiff was insufficient to establish that the plaintiff was entitled to relief under § 12-117a because it was inconsistent with the trial court's conclusion that the turbines and associated equipment are taxable as real property. Because we conclude in part I of this opinion that the associated equipment must be treated as personal property pursuant to § 12-41 (c), the trial court's rejection of DeLacy's appraisal lacks a legal basis, rendering it clearly erroneous by definition. See *Redding Life Care, LLC* v. *Redding*, supra, 308 Conn. 100–101 ("[T]he question of overvaluation usually is a factual one subject to the clearly erroneous standard of review . . . . Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Citation omitted; internal quotation marks omitted.)). Put differently, the record establishes that the valuation accepted by the trial court included the associated equipment as real property, when it should have been classified separately as personal property. Thus, it cannot be reasonably contended that the defendant did not overvalue the real property, and, accordingly, we conclude that, as a matter of law, the plaintiff has satisfied its burden of proving that its property has been overvalued. See, e.g., *Allstate Ins. Co.* v. *Palumbo*, 296 Conn. 253, 266–67, 994 A.2d 174 (2010) (establishing that reviewing court need not remand for factual determination when unchallenged evidence vitiates need to do so). Although we need not remand to determine whether the property was overvalued, we conclude that remand to the trial court is required to determine the amount of the reassessment that would be just pursuant to § 12-117a.[27] See footnote 4 of this

opinion; see also *Ireland* v. *Wethersfield*, 242 Conn. 550, 558, 698 A.2d 888 (1997) ("[i]f . . . the trial court finds that the taxpayer, in light of the persuasiveness, for example, of his appraiser, has demonstrated an overvaluation of his property, the trial court must then undertake a further inquiry to determine the amount of the reassessment that would be just").

Additionally, because the trial court must determine the amount of reassessment on remand given the classification of the associated equipment as personal property, the plaintiff's final claim that the defendant improperly double assessed and double taxed certain equipment associated with the turbines is unlikely to arise on remand,[28] and we need not address the claim.

The judgment is reversed as to the classification of the associated equipment and the case is remanded for further proceedings according to law on the overvaluation and overassessment claims; the judgment is affirmed in all other respects.

In this opinion D'AURIA, MULLINS and KAHN, Js., concurred.

[1] General Statutes § 12-64 (a) provides in relevant part: "All the following mentioned property, not exempted, shall be set in the list of the town where it is situated and, except as otherwise provided by law, shall be liable to taxation at a uniform percentage of its present true and actual valuation, not exceeding one hundred per cent of such valuation, to be determined by the assessors: Dwelling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, all other buildings and structures . . . [and] all other lands and improvements thereon and thereto . . . ."

[2] General Statutes § 12-41 (c) provides in relevant part: "The annual declaration of the tangible personal property owned by such person on the assessment date, shall include, but is not limited to, the following property: Machinery used in mills and factories, cables, wires, poles, underground mains, conduits, pipes and other fixtures of water, gas, electric and heating companies, leasehold improvements classified as other than real property and furniture and fixtures of stores, offices, hotels, restaurants, taverns, halls, factories and manufacturers. . . ."

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] General Statutes § 12-117a provides in relevant part: "Any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom, with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, October 1, 1992, October 1, 1993, October 1, 1994, or October 1, 1995, and with respect to the assessment list for assessment years thereafter, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. . . . The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review or board of assessment appeals, as the case may be, is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and any costs awarded by the court, or, at the applicant's option, shall be

granted a tax credit for such overpayment, interest and any costs awarded by the court. . . ."

[5] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. . . . If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

[6] Although the trial court credited Corey's testimony that the additional values were associated with the turbines, it also credited testimony from Sloane that she did not recall receiving any information or explanations from Corey regarding the additional values.

[7] "Under the cost approach to valuation, the appraiser estimates the current cost of replacing the subject property, with adjustments for depreciation, the value of the underlying land, and entrepreneurial profit." *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 17 n.8, 807 A.2d 955 (2002).

[8] "[T]he income approach is used to value real estate through the capitalization of the property's earning power, such as the collection of rental income." (Internal quotation marks omitted.) *Redding Life Care, LLC* v. *Redding*, 308 Conn. 87, 97 n.10, 61 A.3d 461 (2013).

[9] Although DeLacy did not calculate the assessed value in his report, General Statutes § 12-62a (b) provides in relevant part that "[e]ach . . . municipality shall assess all property for purposes of the local property tax at a uniform rate of seventy per cent of present true and actual value . . . ." Accordingly, the assessed value under DeLacy's appraisal would be $6,895,350.

[10] General Statutes § 12-62 (b) (2) provides: "When conducting a revaluation, an assessor shall use generally accepted mass appraisal methods which may include, but need not be limited to, the market sales comparison approach to value, the cost approach to value and the income approach to value. Prior to the completion of each revaluation, the assessor shall conduct a field review. Except in a town that has a single assessor, the members of the board of assessors shall approve, by majority vote, all valuations established for a revaluation."

[11] General Statutes § 12-71 (a) provides in relevant part: "All goods, chattels and effects or any interest therein, including any interest in a leasehold improvement classified as other than real property, belonging to any person who is a resident in this state, shall be listed for purposes of property tax in the town where such person resides, subject to the provisions of sections 12-41, 12-43 and 12-59. . . ."

[12] The revision of the statute in effect when this court decided *Eastern Connecticut Cable* provided for the taxation of real property including "[d]welling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, *all other buildings* . . . ." (Emphasis added.) General Statutes (Rev. to 1985) § 12-64.

[13] We emphasize this point, as the concurring opinion suggests that this inquiry should focus on the "true and essential function" of the property. Part II of the concurring opinion. We note that this suggestion is not in line with our current case law. See *Stratford* v. *Jacobelli*, supra, 317 Conn. 873–74. As we stated, the controlling inquiry is the use for which the property is suitable.

[14] "[T]he rule of ejusdem generis . . . explains that [when] a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to . . . things of the same general kind or character as those specified in the particular enumeration." (Internal quotation marks omitted.) *Stratford* v. *Jacobelli*, supra, 317 Conn. 871–72.

[15] General Statutes § 7-147a (a) provides in relevant part: "As used in this part . . . 'structure' means any combination of materials, other than a building, which is affixed to the land, and shall include, but not be limited to, signs, fences and walls . . . ."

[16] General Statutes § 7-147p (a) provides in relevant part: "As used in this

part . . . 'structure' means any combination of materials, other than a building, which is affixed to the land, and shall include, but not be limited to, signs, fences and walls . . . ."

[17] General Statutes § 8-13a (a) (1) provides in relevant part: "For purposes of this section, 'structure' has the same meaning as in the zoning regulations for the municipality in which the structure is located or, if undefined by such regulations, 'structure' means any combination of materials, other than a building, that is affixed to the land, including, without limitation, signs, fences, walls, pools, patios, tennis courts and decks."

[18] General Statutes § 29-265 (c) provides in relevant part: "For the purposes of this section, 'structure' has the same meaning as in the zoning regulations for the municipality in which the building permit was issued, or if undefined by such regulations, 'structure' means any combination of materials that is affixed to the land, including, but not limited to, a shed, garage, sign, fence, wall, pool, patio, tennis court or deck."

[19] Several arguments throughout the concurring opinion are premised on the parties' agreement that the turbines are machines. However, we note that the defendant frames its discussion conditionally. It states that, "even *if* the plaintiff's wind turbines or any individual components thereof are regarded as machinery, they are assessable under the provision of § 12-64 (a) that defines 'machinery' as real estate . . . ." (Emphasis added.) The defendant even went so far as to add a qualifying designation—"if machinery"—to one of the headings in its brief to this court to avoid conceding that the turbines were machinery. At oral argument before this court, the defendant's counsel argued that the turbines were "clearly structures" and that the turbines satisfied the definition of a building. However, at no point did the defendant's counsel argue that the turbines were machines.

[20] At oral argument before this court, there was also discussion regarding a 1999 report from the Office of Legislative Research observing that most assessors in Connecticut treat cell towers as personal property, despite this court's determination in *Eastern Connecticut Cable* that the communications tower was a structure that would be taxable as real property after the 1993 revisions to § 12-64 (a). See Office of Legislative Research, OLR Research Report: Property Taxation of Telecommunications Facilities (January 28, 1999) available at https://www.cga.ct.gov/PS99/rpt/olr/htm/99-R-0131.htm (last visited July 27, 2022). This report does not, however, support the plaintiff's argument in this appeal because it acknowledged that, under the post-1993 version of § 12-64 (a), under which "structures are considered real property . . . the common practice is *inconsistent with the law* with regard to towers, *which are structures*." (Emphasis added.) Id. A subsequent report stated that "[i]t appears that treating towers as real property is consistent with the law. [Section 12-64 (a)], which defines real property for tax purposes, includes all structures, although it does not specifically mention towers. Similarly . . . § 16-50j-2a [(30) of the Regulations of Connecticut State Agencies] defines a tower as a structure for purposes of establishing the Connecticut Siting Council's jurisdiction." Office of Legislative Research, OLR Research Report: Property Tax Treatment of Cell Towers (January 12, 2001) available at https://www.cga.ct.gov/2001/rpt/2001-R-0071.htm (last visited July 27, 2022); see also *Snake Meadow Club, Inc.* v. *Killingly*, Superior Court, judicial district of Windham, Docket No. CV-07-4006068-S (July 24, 2008) (45 Conn. L. Rptr. 827, 829) (following § 12-64 (a) in dismissing tax appeal claiming cell tower was improperly taxed as real property).

[21] General Statutes § 12-55 (b) provides in relevant part: "Prior to taking and subscribing to the oath upon the grand list, the assessor or board of assessors shall equalize the assessments of property in the town, if necessary, and make any assessment omitted by mistake or required by law. The assessor or board of assessors may increase or decrease the valuation of any property as reflected in the last-preceding grand list, or the valuation as stated in any personal property declaration or report received pursuant to this chapter. . . ."

[22] The plaintiff also references a wind turbine and associated tax appeal in which the Intermediate Court of Appeals of Hawaii concluded that the wind turbines at issue were not taxable as real property pursuant to the Maui County Code. See *In re Tax Appeal of Kaheawa Wind Power, LLC* v. *Maui*, 135 Haw. 202, 211, 347 P.3d 632 (App. 2014), cert. rejected, Hawaii Supreme Court, Docket No. SCWC-12-0000728 (February 19, 2015). The Hawaii case is distinguishable because the parties in that case agreed that the wind turbines at issue were "machinery" as a matter of law; id., 208; and because the relevant provision of the tax code provided only for the taxation of machinery "[the] use [of which] is necessary to the utility of such land . . . ." (Internal quotation marks omitted.) Id., 207. The court determined that those wind turbines were not necessary or useful to the land for "whatever business may be carried on upon it" and, accordingly,

concluded that those wind turbines were not taxable as real property under the language of the governing provision. (Internal quotation marks omitted.) Id., 211. In contrast, § 12-64 (a) contains no such limiting language, and, thus, the Hawaii case does not support the plaintiff's claim.

[23] As the trial court stated, "[n]either party disputes that the plaintiff is a company engaged in the production of electrical energy."

[24] This court has also declined to apply a fixture analysis in the context of § 7-147a (a), which defines a "structure" as "any combination of materials, other than a building, *which is affixed to the land*, and shall include, but not be limited to, signs, fences and walls . . . ." (Emphasis added; internal quotation marks omitted.) *Historic District Commission* v. *Hall*, 282 Conn. 672, 678, 681, 923 A.2d 726 (2007). We stated that, "although the term 'affix' is derived from the law of fixtures, a determination that an object is 'affixed to the land' under *this* statute does not require consideration of permanency and intent." (Emphasis in original.) Id., 681.

[25] The concurring opinion asserts that "[t]he wind turbine plainly was not realty before being attached to the land . . . ." Part I of the concurring opinion. Perhaps this is true of machinery, but, as determined, at the very least, the towers of the turbines are not machinery. Because the turbines satisfy this court's definition of a "building," claiming the turbines were not realty before being attached to the land is like saying that a house transported to a plot of land was not realty before being affixed to that land. Although there are venerable decisions from this court referring to buildings as "fixtures," the historical usage of the term cannot be understood in context to reference the well established prevailing principles of our fixture jurisprudence with respect to personal property. See, e.g., *Van Auken* v. *Tyrrell*, 130 Conn. 289, 293, 33 A.2d 339 (1943) ("[w]hen the house was built [on] the lot some three years later, it became a fixture, and as such a part of the realty, and title to it merged in the land"); *Landon* v. *Platt*, 34 Conn. 517, 524–25 (1868) (treating buildings as permanent fixtures annexed to soil); see also *ATC Partnership* v. *Windham*, supra, 268 Conn. 480 (standard by which this court determines "whether a piece of personal property has become so connected to realty so as to have lost its character as personalty and become a fixture" has been "reaffirmed consistently").

[26] Because cables, wires, poles, underground mains, conduits, and pipes are enumerated in § 12-41 (c), any of these articles affixed to the plaintiff's wind turbines are, without question, personal property. However, a determination of which other equipment associated with the turbines must be considered personal property is dependent on what properly can be considered a fixture as required by the statute. "The question as to whether a particular piece of property is personalty or a fixture is a question of fact." *ATC Partnership* v. *Windham*, supra, 268 Conn. 479. As such, identification of the associated equipment and the fixtures among it must be determined on remand.

[27] The plaintiff also brought this property tax appeal pursuant to § 12-119. See footnote 5 of this opinion. "Claims that an assessor has misclassified property and, consequently, overvalued it, comprise a category of appeals frequently pursued under the aegis of § 12-119." *Griswold Airport, Inc.* v. *Madison*, 289 Conn. 723, 740, 961 A.2d 338 (2008). "In such cases, the determinative issue typically is whether, as a matter of law, the property at issue properly was subject to taxation as the type of property falling within the classification applied by the assessor. . . . If the plaintiff can show that it was not, it necessarily follows that the resulting assessment was manifestly excessive." (Citation omitted.) Id., 741. Because we conclude that the equipment associated with the turbines improperly was classified as real property, it necessarily follows that the defendant's assessment was manifestly excessive. However, this court has recently stated that, although "an insufficiency of data or the selection of an inappropriate method of appraisal could serve as the basis for not crediting the appraisal report that resulted, it could not, *absent evidence of misfeasance or malfeasance*, serve as the basis for an application for relief from a wrongful assessment under § 12-119. . . . In short, when reviewing a claim raised under § 12-119, a court must determine whether the plaintiff has proven that the assessment was the result of illegal conduct. . . . Put differently, tax relief under § 12-119 is available only in an extraordinary situation." (Citation omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Tuohy* v. *Groton*, 331 Conn. 745, 760, 207 A.3d 1031 (2019). Accordingly, we conclude that the plaintiff is entitled to relief only pursuant to § 12-117a.

[28] Specifically, the plaintiff claims that the computer system at 17 Flagg Hill Road was included in its 2015 through 2018 declarations of code 20 personal property, which was accepted by the defendant's assessor, *and* in

the assessor's valuation of real property associated with 29 Flagg Hill Road, resulting in a double assessment. The plaintiff also claims that, when the assessor accepted its amended 2016 declaration of code 20 personal property costs associated with the completion of the turbines while classifying the turbines as real property, she caused another double assessment. Because we conclude that, on remand, the associated equipment must be considered as personal property pursuant to § 12-41 (c), the issue of specific equipment being taxed as both real and personal property is unlikely to arise.